**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICK COLLINS, INC.,<br>8015 Deering Avenue<br>Canoga Park, CA 91304<br><br>and<br><br>THIRD DEGREE FILMS,<br>9035 Independence Avenue<br>Canoga Park, CA 91304,<br><br>     Plaintiffs,<br>v.<br><br>JOHN DOE,<br><br>     Defendant. | )<br>)<br>)<br>) Civil Action Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiffs, Patrick Collins, Inc. and Third Degree Films ("Plaintiffs"), for its complaint against John Doe ("Defendant") allege as follows:

**Introduction**

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"), and the Lanham Act, as amended, 15 U.S.C. §§ 1051 et seq.

2.    Through this suit, Plaintiffs allege Defendant is liable for:

- Direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501;

- Contributory copyright infringement;

- Direct trademark infringement under 15 U.S.C. §§ 1114(1) and 1125(a); and

- Contributory trademark infringement.

## Jurisdiction And Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

4.      The Defendant's acts of copyright infringement occurred using Internet Protocol address 66.44.62.85 ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (a) Defendant committed the tortious conduct alleged in this Complaint in the District Columbia, and (i) Defendant resides in District of Columbia and/or (ii) has engaged in substantial and not isolated business activity in the District of Columbia.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

## Parties

6.      Plaintiff, Patrick Collins, Inc., is a corporation organized and existing under the laws of the State of California and has its principal place of business located at 8015 Deering Avenue, Canoga Park, CA 91304.

7.      Plaintiff, Third Degree Films, is a corporation organized and existing under the laws of the State of California and has its principal place of business located at 9035 Independence Avenue, Canoga Park, CA 91304.

8.      Defendant is an individual who is a resident of the District of Columbia. Defendant's IP address is 66.44.62.85.

9.      An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

10.     The ISP to which Defendant subscribes, RCN Corporation, can correlate the Defendant's IP address to the Defendant's true identity.

**Factual Background**

I.      *Plaintiffs Own the Copyright to a Motion Picture*

11.     Plaintiff, Patrick Collins, Inc., is the owner of United States Copyright Registration Number PA0001751688 (the "Registration") for the motion picture entitled "Big Wet Asses 19" (the "Work"), which was registered on or about August 26, 2011.

12.     Plaintiff, Third Degree, is the owner of United States Copyright Registration Number PA0001745168 (the "Registration") for the motion picture entitled "Teens in Tight Jeans" (the "Work"), which was registered on or about July 7, 2011.

13.     Copies of the internet screen shot from the U.S. Copyright Office's website evidencing, among other things, Plaintiffs' ownership of the Registrations and the registration dates are attached as Exhibit A.

II.     *Defendant Used BitTorrent To Infringe Plaintiffs' Copyrights*

14.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users using the BitTorrent protocol on the internet account for over a quarter of all internet traffic. The creators and user's of BitTorrent developed their own lexicon for use when talking about BitTorrent, which can be found on www.Wikipedia.org.

15.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

        A.      _Defendant Installed a BitTorrent Client onto His Computer_

16.     Defendant installed a BitTorrent Client onto his computer.

17.     A BitTorrent "Client" is a software program that implements the BitTorent protocol.  There are numerous such software programs including µTorrent and Vuze, both of which can be directly downloaded from the internet.   See www.utorrent.com and http://new.vuze-downloads.com/.

18.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

        B.      _The Initial Seed, Torrent, Hash and Tracker_

19.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

20.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into groups of bits known as "pieces."

21.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

22.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free.  In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

23.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

24.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

25.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

26.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

C.     *Torrent Sites*

27.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com.

28.     Upon information and belief, Defendant went to a torrent site to upload and download Plaintiffs' copyrighted Works.

D.     *Uploading and Downloading a Work Through a BitTorrent Swarm*

29.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

30.     The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Works, to the peers seeking to download the computer file.

31.     Once a peer receives a piece of the computer file, here a piece of the Copyrighted Works, it starts transmitting that piece to the other peers.

32.     In this way, all of the peers and seeders are working together in what is called a "swarm."

33.     Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

34.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers.  The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

35.     Once a peer, here the Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie.  Also, once a peer has

downloaded the full file, that peer becomes known as "an additional seed" because it continues to distribute the torrent file, here the copyrighted Works.

E. *Plaintiffs' Computer Investigators Identified the Defendant's IP Addresses as an Infringer in a Swarm That Was Distributing Plaintiffs' Works*

36. Plaintiffs retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted Works.

37. IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer network for the presence of infringing transactions.

38. IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the torrent file identified by the SHA-1 hash value of E776C99EB5DA83A6F678A5EFCC36CBFB9F87680F, for the Work "Big Wet Asses 19," and the SHA-1 hash value of 3A7FEA8906A476A2F9FB4A8F831AF50B834FC133, for the Work "Teens in Tight Jeans" ("Unique Hash Numbers").

39. The IP addresses, Unique Hash Numbers and hit dates show Defendant had copied pieces of each of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers, and was distributing it to other peers in a BitTorrent swarm as indicated below:

   a. Patrick Collins's "Big Wet Asses 19" on December 5, 2011 11:37:05 UTC; and
   b. Third Degree's "Teens in Tight Jeans" on August 24, 2011 at 4:08:21 UTC.

40. Through the transaction(s), the Defendant's computer used its IP address to connect to the investigative server from a computer in this District in order to transmit full copies, or portions thereof, of digital media files identified by the Unique Hash Numbers.

41.     IPP's agent analyzed each BitTorrent "piece" distributed by Defendant verified that re-assemblage of the piece(s) using a BitTorrent Client results in fully playable digital motion pictures of the Works.

42.     IPP's agent viewed the Works side-by-side with the digital media files that correlate to the Unique Hash Numbers and determined that they were identical, strikingly similar or substantially similar.

## Miscellaneous

43.     All conditions precedent to bringing this action have occurred or been waived.

44.     Plaintiffs have retained counsel and are obligated to pay said counsel a reasonable fee for its services.

## COUNT I
## Direct Infringement Against Defendant

45.     The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

46.     Plaintiffs are the owners of the Registrations for the Works, each of which contains an original work of authorship.

47.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied one or more of the constituent elements of the registered Works that are original.

48.     Plaintiffs did not authorize, permit or consent to Defendant's copying of their Works.

49.     As a result of the foregoing, Defendant violated Plaintiffs' exclusive right to:

(A)     Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Works to the public by sale or other transfer of

ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works audible and transmitting said performance of the Works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works nonsequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

50.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

51.     Plaintiffs have suffered actual damages that were proximately caused by the Defendant's infringements, including lost sales, price erosion and a diminution of the value of its copyright.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)     Permanently enjoin Defendant and all other infringers who are in active concert or participation with Defendant from continuing to infringe Plaintiffs' copyrighted Works;

(B)     Order that Defendant delete and permanently remove the torrent files relating to Plaintiffs' copyrighted Works from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or control;

(D)     Award Plaintiffs either their actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000 pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E)     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiffs any other and further relief this Court deems just and proper.

## COUNT II
## Contributory Infringement Against Defendant

52.     The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

53.     Plaintiffs are the owners of the Registrations for the Works, each of which contains an original work of authorship.

54.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the registered Works that are original.

55.     By participating in the BitTorrent swarm with other infringers, the Defendant induced, caused or materially contributed to the infringing conduct of the other peer infringers in the swarm.

56.     Plaintiffs did not authorize, permit or consent to Defendant's inducing, causing or materially contributing to the infringing conduct of other peer infringers.

57.     Defendant knew or should have known that other BitTorrent users, here other infringers, would become members of a swarm with Defendant.

58.     Defendant knew or should have known that other BitTorrent users in a swarm with it, here other infringers, were directly infringing Plaintiffs' copyrighted Works by copying one or more of the constituent elements of the copyrighted Works that are original.

59.     Indeed, Defendant directly participated in and therefore materially contributed to each other participants' infringing activities.

60.     Defendant's contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

61.     Plaintiffs have suffered actual damages that were proximately caused by the Defendant and each of the peer infringers including lost sales, price erosion, and a diminution of the value of its copyrights.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)     Permanently enjoin Defendant and all other infringers who are in active concert or participation with Defendant from continuing to infringe Plaintiffs' copyrighted Works;

(B)     Order that Defendant delete and permanently remove the torrent files relating to Plaintiffs' copyrighted Works from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or control;

(D)     Find that Defendant is jointly and severally liable for the direct infringement of each other infringer that Defendant induced, caused or materially contributed to commit an infringement;

(E)     Award Plaintiffs either their actual damages and any additional profits made by Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000

pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(F)     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G)     Grant Plaintiffs any other and further relief this Court deems just and proper.

## COUNT III
### Direct Trademark Infringement Against Defendant

62.     The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

63.     Plaintiff, Patrick Collins, Inc., is the owner of the trademarks PATRICK COLLINS and ELEGANT ANGEL and its corresponding federal registrations.

64.     Plaintiff, Third Degree Films, is the owner of the trademark THIRD DEGREE FILMS and its corresponding federal registration.

65.     Defendant's unauthorized use and reproduction in commerce of the marks PATRICK COLLINS, ELEGANT ANGEL, THIRD DEGREE FILMS, and/or variations thereof, is likely to cause confusion, mistake or deception of consumers as to the source or origin of Plaintiffs' goods, services or commercial activities, or lead consumers to mistakenly believe that Plaintiffs' sponsors approves of or is affiliated with Defendant or their goods, services or commercial activities.

66.     As a result of Defendant's infringements, consumers are likely to purchase Defendant's goods or services, or patronize Defendant's commercial activities, mistakenly believing them to be those of the Plaintiffs.

67.     Plaintiffs cannot control the nature and quality of the goods, services or commercial activities offered by Defendant, and any failure, neglect or default by the Defendant in providing same will and does reflect adversely on Plaintiffs as their believed source or origin,

thus hampering efforts by Plaintiffs to protect their reputations, and resulting in loss of sales, a diminution in Plaintiffs' reputations, and/or the need for considerable expenditures to promote their goods, services or commercial activities under their marks, all to the irreparable harm of Plaintiff.

68.    Plaintiffs' damages are continuing, and additional injury and damage to Plaintiff will continue to occur so long as Defendant's above alleged unauthorized and infringing uses persist.

69.    Defendant's infringement is willful and deliberate, has resulted in gains, profits and advantages to Defendant, and is designed specifically to trade upon the enormous goodwill associated with the PATRICK COLLINS, ELEGANT ANGEL and THIRD DEGREE FILMS marks.

70.    Defendant's infringement constitutes a violation of 15 U.S.C. § 1114(1), and will continue unless enjoined by this Court.

71.    Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)    Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing their unauthorized and misleading use of Plaintiffs' trademarks;

(B)    Order that Defendant delete and permanently remove the torrent file relating to Plaintiffs' trademarks from each of the computers under Defendant's possession, custody or control;

(C)    Order that Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or control;

(D)     Ordering Defendant to prepare and file with the Court and serve on Plaintiffs a report in writing under oath setting forth in detail the manner and form in which Defendant have complied with the Court's judgment;

(E)     Ordering that an accounting be made of the profits Defendant has wrongfully obtained from his or her use of the PATRICK COLLINS, ELEGANT ANGEL and THIRD DEGREE FILMS marks, or any variation thereof;

(F)     Awarding Plaintiffs three times such profits or Plaintiffs'' damages, whichever amount is greater;

(G)     Awarding Plaintiffs compensatory damages under 15 U.S.C. § 1117;

(H)     Awarding Plaintiffs statutory damages under 15 U.S.C. § 1117;

(I)     Awarding Plaintiffs their attorneys' fees and costs incurred in this action under 15 U.S.C. § 1117;

(J)     Granting Plaintiffs' such other and further relief as the Court deems just and proper.

## COUNT IV
### Contributory Trademark Infringement Against Defendant

72.     The allegations contained in paragraphs 1-44 are hereby re-alleged as if fully set forth herein.

73.     The actions of Defendants above, and specifically, their participation and inducement in the distribution of torrent files containing the PATRICK COLLINS, ELEGANT ANGEL and THIRD DEGREE FILMS trademarks to those whom Defendant knows or has reason to know is engaging in trademark infringement, constitute contributory trademark infringement in violation of federal law.

74.     Each act of contributory trademark infringement has resulted in loss of sales, a diminution in Plaintiffs' reputations, and/or the need for considerable expenditures to promote their goods, services or commercial activities under their marks, all to the irreparable harm of Plaintiff.

75.     Plaintiffs' damages are continuing, and additional injury and damage to Plaintiff will continue to occur so long as Defendant's above alleged unauthorized and infringing uses persists.

76.     Defendant's contributory infringements are willful and deliberate, have resulted in gains, profits and advantages to Defendant, and are designed specifically to trade upon the goodwill associated with the PATRICK COLLINS, ELEGANT ANGEL and THIRD DEGREE marks.

77.     Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing their unauthorized and misleading use of Plaintiffs' trademarks;

(B)     Order that Defendant delete and permanently remove the torrent file relating to Plaintiffs' trademarks from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or control;

(D)     Find that Defendant is jointly and severally liable for the unauthorized and misleading use of each other infringer;

(E)     Award Plaintiffs damages and their attorneys' fees and costs incurred in this action; and

(F)     Grant Plaintiffs any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

By: /s/ *Jon A. Hoppe*
Jon A. Hoppe, Esquire #438866
Counsel
Maddox, Hoppe, Hoofnagle &
        Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580